21-2245 (L)
*Receiver Jed Horwitt v. Flatiron Partners, LP, Neila Fortino*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of January, two thousand twenty-three.

Present:
>JOHN M. WALKER, JR.,
>EUNICE C. LEE,
>BETH ROBINSON,
>>*Circuit Judges.*

_____

RECEIVER JED HORWITT, ESQ.,

>*Receiver-Appellee,*

SECURITIES AND EXCHANGE COMMISSION,

>*Plaintiff,*

>v.                                                    21-2245 (L),
>                                                      21-2247 (Con)

FLATIRON PARTNERS, LP, NEILA FORTINO,

>*Claimant-Appellants,*

MARK J. VARACCHI, SENTINEL GROWTH FUND MANAGEMENT LLC,
RADAR ALTERNATIVE FUND LP, RELIEF DEFENDANT,
RADAR ALTERNATIVE MASTER FUND SPC, RELIEF DEFENDANT,

1

*Defendants.*

_____

For Receiver-Appellee: STEPHEN M. KINDSETH (James M. Moriarty, *on the brief*), Zeisler & Zeisler, P.C., Bridgeport, CT.

For Claimant-Appellant Flatiron: NOAM BIALE (Theresa Trzaskoma and Cathy Liu, *on the brief*), Sher Tremonte LLP, New York, NY.

For Claimant-Appellant Fortino: DAVID T. MARTIN, Cummings & Lockwood LLC, Stamford, CT.

Appeal from an order of the United States District Court for the District of Connecticut (Bolden, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Claimant-Appellants Flatiron Partners, LP ("Flatiron") and Neila Fortino appeal from a July 30, 2021 opinion and order of the district court (Bolden, *J.*) granting the motions of Receiver-Appellee Jed Horwitt ("the Receiver") for determination of Flatiron's and Fortino's claims pursuant to the approved distribution plan of the assets of multiple investment funds following the collapse of a Ponzi scheme. On appeal, Flatiron argues that this Court should reverse because the district court relied on erroneous factual findings and inequitably applied the Rising Tide method of distribution to its claim. Fortino likewise argues that this Court should reverse because the distribution plan wrongly deducted funds from her claim that were not received by her, but rather by an agent who was acting adversely to her interests.

We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we reference here only as necessary to explain our decision. For the following reasons, we **AFFIRM** the district court's grant of the Receiver's motions for determination of Flatiron's and Fortino's claims.

This Court reviews a "District Court's decision relating to the choice of distribution plan for the receivership estate for abuse of discretion." *S.E.C. v. Credit Bancorp, Ltd.*, 290 F.3d 80, 87 (2d Cir. 2002); *see also S.E.C. v. Fischbach Corp.*, 133 F.3d 170, 175 (2d Cir. 1997) ("Once the profits have been disgorged, it remains within the court's discretion to determine how and to whom the money will be distributed, and the district court's distribution plan will not be disturbed on appeal unless that discretion has been abused.").

**I.    Flatiron's Claims**

On January 15, 2015, Flatiron, relying on the representation that its funds would be maintained in a segregated subaccount, wired $2 million in client assets to Radar Alternative Fund LP ("Radar LP"), a fund principally controlled by Mark Varacchi, one of the key perpetrators of the overarching Ponzi scheme. Following that investment, Varacchi commingled the Flatiron funds with those of other defrauded investors and, when Flatiron attempted to access account statements, Varacchi provided vague explanations for the delay in setting up Flatiron's subaccount. In mid-February 2015, Flatiron requested that Varacchi transfer back the $2 million that Flatiron had invested so that Flatiron's fund administrator could analyze the funds. At that point, however, Varacchi had spent Flatiron's initial $2 million to pay other investors. Thus, on February 26, 2015, when Varacchi wired $2 million to Flatiron, that transfer was comprised of funds from other defrauded investors. On March 2, 2015, after completing its analysis of the funds, Flatiron wired $2 million back to Radar LP.

Following the exposure of the Ponzi scheme and the establishment of the receivership, the district court approved a claim calculation methodology known as "Rising Tide." Using the Rising Tide method, the Receiver treated payments received by a claimant prior to the scheme's collapse as "distributions," on par with the distributions to be made by the Receiver. Applying

3

the Rising Tide Method, "an investor who deposited $2 million with the Receivership Entities and received $1.5 million in return during the course of the Ponzi scheme (realizing a 75% recovery) [would] not receive a distribution until the investor who deposited $500,000 and received nothing recovers 75% in [the] Receivership Proceeding." Joint App'x at 142. The claimants who recovered the least amount of money from the Ponzi scheme while it was still active—those with the lowest pro rata percentage amounts—were prioritized for receiving fund allocations from the receivership.

Flatiron submitted that its recovery percentage prior to the receivership was 20.74 percent. In reaching that percentage, Flatiron argued that the various transactions between it and Radar LP should be treated as a single $2 million investment, rather than as a series of transfers, because Radar LP returned the $2 million to Flatiron temporarily and for administrative purposes only. The Receiver, by contrast, submitted that Flatiron's pre-receivership recovery percentage was 43.06 percent—an amount that adversely impacted Flatiron's prospects of receiving a distribution from the receivership. The Receiver reached that figure by treating each $2 million transfer distinctly, such that Flatiron made an initial investment in January, received a pre-receivership distribution from Radar LP in February, and then made a second investment in March. In its July 30, 2021 opinion, the district court found that the Receiver correctly determined Flatiron's recovery percentage.

On appeal, Flatiron argues that the district court relied upon "clearly erroneous factual findings" when it determined that Flatiron intended for the second $2 million transfer to Radar LP to be a subsequent investment that followed a distribution, as opposed to Flatiron returning what had been a temporary refund. Appellant Flatiron's Br. at 29–31. We disagree. In reviewing the Receiver's calculation, the district court did not make a factual determination regarding

4

Flatiron's intent for the transfer. Instead, the district court simply applied the Rising Tide method, which provides that "an investor's Claim . . . must be calculated *based solely* upon the principal amounts deposited less any distributions actually received." Joint App'x at 128–29 (emphasis added). Accordingly, the district court did not abuse its discretion in declining to take intent into account in applying the Rising Tide method and did not make an erroneous finding of fact in treating the $2 million as a distribution to Flatiron.

Flatiron further argues that by effectively designating the $2 million transfers on February 26 and March 2 as a distribution and second investment, the district court's adjudication of this pro rata distribution plan as applied to Flatiron does not satisfy the "fair and reasonable" standard articulated in *S.E.C. v. Wang*, 944 F.2d 80, 81 (2d Cir. 1991). Appellant Flatiron's Br. at 17. In particular, Flatiron contends that even in the context of the Rising Tide methodology, the district court abused its discretion in approving the Receiver's decision to count Radar LP's payment to Flatiron, and Flatiron's return of that money, as a distribution and reinvestment when it was not in fact a distribution and reinvestment. Especially given that Flatiron's initial investment was commingled with other investors' funds such that the return of "its" $2 million was funded at least in part with other investors' money, and given its voluntary decision to send the monies back to Radar LP, we cannot conclude that the district court abused its discretion in treating the transfer to Flatiron as a distribution in applying the Rising Tide methodology. While this distribution plan is to Flatiron's detriment, that alone demonstrates neither that the district court did not meet the "fair and reasonable" standard nor that it abused its discretion. It is clear that "[a]n equitable plan is not necessarily a plan that everyone will like." *S.E.C. v. Credit Bancorp, Ltd.*, No. 99 CIV. 11395 RWS, 2000 WL 1752979, at *29 (S.D.N.Y. Nov. 29, 2000), *aff'd*, 290 F.3d 80 (2d Cir. 2002).

5

## II. Fortino's Claims

Fortino principally invested in the Ponzi scheme via her agent—and Varacchi's co-conspirator—Steven Simmons. In August 2014, Fortino invested a total of $5,950,000 with Mind the Gap Consulting, LLC ("MTG"), an entity wholly owned by Simmons. Simmons subsequently transferred $4,000,000 of Fortino's investment to Sentinel Growth Fund Management, LLC ("Sentinel")—another entity principally controlled by Varacchi—and then stole and misappropriated the rest. Sentinel later transferred the majority of Fortino's funds back to MTG and, at the time of the scheme's collapse, held only a small portion of her original investment.

When Fortino submitted her proof of claim to the Receiver, her calculation included money that had been distributed to MTG, but which MTG had improperly withheld from her. The Receiver's calculation, by contrast, excluded the MTG funds from Fortino's claim as pre-receivership distributions because they were held by an entity owned by Fortino's agent. Thus, for claim calculation purposes, because Simmons was Fortino's agent, it did not matter whether Fortino actually received the money that Sentinel sent to MTG. In its July 30, 2021 opinion, the district court approved the Receiver's determination of Fortino's claim.

On appeal, Fortino argues for the first time that the sums Simmons stole as her agent "cannot possibly be imputed as sums 'actually received'" by her under Connecticut law because "her agent's actions were adverse to her interests." Appellant Fortino's Br. at 9. "[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir. 2005) (alteration in original). Thus, because Fortino failed to make this adverse interest argument before the district court, it is waived, and this Court need not entertain it on appeal.

6

But, even if we concluded that Fortino preserved her argument, we would reject it on the merits. In arguing that Sentinel's return of funds to MTG should not be treated as a distribution to her, Fortino relies on a 1923 Connecticut decision explaining that when an agent is acting adversely to the interests of the principal, that triggers an exception to the general rule that the knowledge of an agent gained within the course of the agency is imputed to the principal. *See Resnik v. Morganstern*, 122 A. 910, 911 (Conn. 1923). *Resnik* does not purport to address the effect on a third party's liability to the principal when a third party pays an agent with actual or apparent authority. The Connecticut Supreme Court has held that payment to an agent with actual or apparent authority to accept payment on behalf of the principal constitutes payment to the principal—even in a case in which the agent misapplied the funds. *See Gordon v. Tobias*, 817 A.2d 683, 689 (Conn. 2003) (concluding that a third party's payment of the balance due on a mortgage to an agent with apparent authority to accept payments on the principal's behalf discharged the mortgage even though the agent did not distribute the funds to the principal). Moreover, any funds invested in MTG by Fortino that were misappropriated by Simmons or MTG and never invested in Sentinel in the first place fall outside of the scope of the Receivership.

We have considered Flatiron and Fortino's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

7